We have four cases this morning, a government employee case from the Merit Systems Protection Board, a patent case from the District Court, a government contract case from the Court of Federal Claims, and a second patent case from another District Court. Our first case is Richard Abrams v. Social Security Administration, 2011-31-77, Mr. Broida. Thank you, Your Honor. Good morning. May it please the Court, I have the honor to represent Administrative Law Judge Richard Abrams, who is no longer serving as an ALJ because he was discharged by the SSA with the approval of the Merit Systems Protection Board, leading us to this Court. The question before the Court, the legal issue, is whether the Merit Systems Protection Board properly applied the seminal decision with respect to performance-based removals of ALJs in 1984, the case of Social Security Administration v. Goodman, or departed from that case without explanation, and if so, what to do about it. But that's not binding on us. Pardon me, sir? Goodman case is not binding on us. No, sir, no board case is binding on you. You're binding on the board. That's why we're here. So the question in Goodman was how to deal with a low producer, an ALJ who's a low producer. The SSA has more than 1,000 ALJs. I suspect my client was certainly not the highest producer. He probably wasn't the lowest producer, but the agency chose to... Mr. Broida, supposing there must be a way, and in the green brief, the amicus says, Judge Abrams' independent duty to develop the record is indistinguishable from his qualified decisional independence because he applies the law to the facts or denies benefits. Surely there must be a way to make him do his job adequately and be reasonably polite to people. Suppose he only issues one opinion a year. I think that's an excellent question. It's one I've given a lot of thought to, whether an ALJ should have the same independence as, let us say, an Article III judge, and the answer is no. And the response to that, what do you do about a judge who decides that he's not going to do any work, let's say handle one case a year and collect a reasonably good salary for doing it, is that you take an action against him but based upon a failure to perform in comparison with his peers, which is exactly what Social Security attempted to do in the Goodman case. It's not an impossible task. One can compare judges one to another based upon comparable case loads. Most of these judges do more or less the same thing. The problem was with the Goodman case, Social Security Administration simply did not prove the comparability of the statistics it used to try to remove Judge Goodman. Now the board in the Goodman case came up with an alternate theory as to how an ALJ could be removed. This was dictum because it wasn't necessary to decide the case. But what the board said in 1984 in the Goodman case was you can't provide a blanket exemption on performance issues to these ALJs. But agencies, SSA and other employers of ALJs, if you can't remove them on statistics, you can give them direct orders to process cases in a particular way or in a timely fashion. And that's the essence of this case, isn't it? It is. That you didn't respond to instructions. But there's one word that's missing, and that one word is taken from the Goodman case, and that's insubordination. Now the agency in this case departed from the standard that was supplied by the board in Goodman, charged Judge Abrams with a failure to follow instructions without assessing an insubordinate intent. And this is where things became somewhat confused. It confused the administrative law judge for the MSPB who was an individual. That you failed to follow orders and still not be insubordinate. Here's what the judge said, Your Honor. Can I ask you yes or no? The answer is the judge did... No, in the real world. I'm sorry, your question... Can't you fail to follow instructions but not be insubordinate? You certainly can. And that would be a species of negligence. But the board did not provide for that... Isn't that what happened here? Pardon me? He wasn't charged with insubordination. No, but the board required... It seems to me that the board required... Why do you need to charge with insubordination if you don't believe somebody was insubordinate? The board did not provide that. I mean, it's a fine question. But the board did not provide that option. Lost questions from the bench are fine questions. Yes, sir. It's a presumption. I may disagree, but it would be private. I mean, the SSA presumably knows what it's doing. It's read Goodman. If it thought that Judge Abrams had been insubordinate, it probably would have said, well, we're going to knock you down for insubordination. They could have done that. Probably could. And the factual record would not have supported that because, as you point out in your brief, he did substantially, in your view, comply with at least one, if not two, of the directives. And you're absolutely correct. And if that were the law, I think the government's position would be, sorry to say, correct. What's wrong with the law that says that if you are not insubordinate, but you fail to follow instructions, fail to comply fully, we can discipline you. Because under 5 U.S.C. 7521, which delegates to the Merit Systems Protection Board, the authority to make determinations as to what constitutes good cause, the board has held in Goodman that you have to charge insubordination with respect to a failure to perform duties. You cannot simply charge failure to perform duties. That's what Goodman appears to mean. So if you want to read Goodman to say the only way you can get misconduct is through insubordination, and you believe Goodman held that, as the presiding judge pointed out, we're not bound by that. This court is not. However— So my question to you was, assuming for purposes of argument that Goodman didn't exist, and you came and made the argument, why should I accept it? Why shouldn't I say, well, where insubordination is involved, yes, charge with insubordination. But where insubordination is not involved, but failure to comply with instructions is, then why can't there be a legitimate sanctioning, if you will, of the individual for that? Especially in a setting, sir, where, as you candidly admit in your brief, and I applaud you for that, you—substantial evidence supports the findings by the ALJ confirmed by the board that Mr. Abrams was not disciplined for failure to meet the benchmarks, nor was he disciplined in such a way that it impinged upon his judicial autonomy. So we've got a fact record here where there's no way your client can gain any leverage with benchmarks, nor whether on the ground that his judicial autonomy was impaired. It was simply, he was given an instruction, please do something or explain to me why you can't do it. And he didn't explain why he couldn't do it. So to me, it's sort of like Nett's case. The standard was very clear. Either do something or explain to me why you can't do it. Your Honor, the response to your question assumes one factor, which is that Goodman doesn't exist. Goodman does exist. It was relied upon by the administrative law judge borrowed from the National Labor Relations Board for this case. At page 85 of the appendix, in part, the administrative law judge assessing this case said, indeed, respondent's failure to fully comply with McPhail, that was Abrams' supervisor. Goodman stands in some people's minds for the proposition that you can get at misconduct through 7521. The argument, the key argument that was made in Goodman was you can't do it. You can't get at misconduct. Because in getting at misconduct, you're going to impinge the judicial autonomy. Sir, with respect, the argument in Goodman was that you can address poor performance through 7521 in one of two ways. One, which SSA tried and failed because it didn't have proper proof. The second was an insubordinate failure to follow instructions. The ALJ for the board recognized this. I was going to mention at page 85 of the appendix where her decision is reprinted. She says, respondent's, that's Abrams, failure to fully comply with McPhail, that's his supervisor's directives. Evidence is not only respondent's insubordination. Let me come back to a point that I made earlier that you agreed with because it was in your favor, which sort of was that insubordination has to be total. Why can't you have partial insubordination? What is it about the nature of insubordination that would say that Mr. Abrams was not insubordinate here? As it was defined in the case of Phillips versus General Services Administration many years ago, insubordination is a direct refusal to comply with an order. Phillips did not supply a partial insubordination response either. I'm just saying as a matter, we're writing on a clean slate here because there's nothing from our court that tells us what constitutes insubordination. Sir, the Phillips case is from your court. And Phillips says? Phillips says that insubordination is a refusal or a failure to respond to a direct order from a superior. Was there a direct order from a superior here? In which case, sir? In our case. Yes, sir. What was the direct order? The direct orders were from Judge McPhill. There were four of them. And each was either to do something or explain why you can't do it. They were direct orders. Yes, sir. And were those orders complied with? In part, yes, sir. But not entirely? Yes, sir. And so wasn't Abrams insubordinate for having not fully complied? No, sir. Why not? Because I do not believe a person could be partially insubordinate. You're either insubordinate or you're not. Well, that's what I was asking you. I mean, that's because Professor Broida says that, sir. Why does Judge Clevenger have to think that, sir? Do you have a case that says that? Is there a case that says there's no such thing as partial insubordination? No, sir. How could there be such a case? That was what I was trying to say. Not as well as you. But that's correct. There could not be a case. You either are insubordinate or you respond. In the military, you either do it or you don't. If you fail to respond, it used to be, if you're going to do the yes-or-no sort of stuff, it used to be there was something called dumb insolence in the service. Sure. His failure to respond is silent insolence. And leaving aside, I mean, the reason I read you that quote before was, the words that bother me in the green brief are decisional independence. This isn't a decisional independence case. It's not about the outcome of the cases. It's about having the cases come out. Yes, sir. The Administrative Law Judge Association, which is not here to argue its case today, would state that this is a matter relating to judicial independence, and they state all the reasons why. My view for Judge Abrams is I don't have to get there, don't have to deal with judicial independence because what we're dealing with here is a departure, an unexplained departure by the board from the Goodman case. That's my concern. And you're saying you can't have partial insolence because somebody has to be entirely insolent or entirely. Sir, I believe in response to your question, if you're going to be insubordinate, you have to prove intent to be insubordinate. So failure to respond, for example, doesn't show intent. You could fail to respond for many reasons, including negligence. You could be late, but it would not necessarily show intent. Mr. Brody, you wanted to save five minutes. You're well into your rebuttal time. Yes, sir. Use it or save it. Save it, sir. Thank you. All right. Ms. Oxford for the government. May it please the Court. Judge Abrams seems to be operating from an invalid premise here in contending that Goodman, first, that Goodman would somehow be binding on this Court, and second, that Goodman somehow required that a case based upon failure to follow instructions has to be also an insubordination case. In Goodman, Ford did nothing more than suggest that rather than going with the statistical theory that the agency had gone with in that case, it could instead have gone with a failure to follow instructions, and it could be insubordination, but the Court didn't say insubordination was required. And the Court here, I mean, sorry, the ALJ here basically made that point. She said Goodman is distinguishable for a couple of reasons. First, there the agency relied on statistical evidence and didn't show how it compared to other judges. Therefore, that basis was invalid. But where Judge Abrams' counsel gets this idea that Goodman requires insubordination, I don't know. MSPB has a tradition. I've cited four cases where failure to follow instructions was the basis for a misconduct charge under Chapter 75. Obviously, Chapter 75 doesn't apply here, but there's no reason why the failure to follow instructions charge should not have been sufficient to support the removal. And the ALJ in this case wrote a 77-page opinion detailing Judge Abrams' problems that had begun in 2003. For three or four years, the agency didn't take action. They suggested he go for training. They sent him memos saying, could you please improve your timeliness? And he ignored all of that. Finally, in 2007, the agency decided to take a different tack and issued directives based upon and lay out the cases that were aided. It was based in part on the agency's aided cases initiative, which was an effort to get out cases that had been languishing for 900,000 years. Ultimately, the statutory language, which hasn't been mentioned here, is what? Good cause. Good cause. And in the long case, this court defined that as conduct that undermines public confidence in the administrative adjudicatory process. In this case, the board defined it as all matters which affect the ability and fitness of an ALJ to perform the duties of his office. Here, Judge Abrams' behavior evidenced the neglect of his duties as an ALJ to provide prompt and orderly dispatch of business. That is the objective of the Administrative Procedure Act in providing the whole- Ms. Hausford, let's assume that in each of the directives that were given to Judge Abrams, the language had simply been, we want you to do things by a specific time. It didn't include the instruction that said, and if you can't do it, please explain why. So just assume, for purposes of argument, the please explain why part of the directive is not there. If that had been the nature of the directives, wouldn't that have been getting awfully close to and punishing him for failure to meet the benchmarks? No, Your Honor. Why not? Because Judge Abrams, none of the directives purported to limit Judge Abrams to the length of time in the benchmark. I would also point out that he was- The reason why is he's vulnerable. He was past all the benchmark time. As I was beginning to say before, the main purpose for these directives was because the agency had an aged cases initiative where cases were languishing for 900 to 1,000 days or more. I understand all that. And if they had simply said, we are going to discipline you for failure to make the benchmarks, look at the record. The record shows you haven't made the benchmark. Then the union contract would have forbade that punishment, correct? There is precedent that collective bargaining agreement provisions can be enforced like regulation. So we don't dispute that. But that is not the case here. But it would be what I'm trying to get you. I'm trying to get the government to just be whether it would be candid with me and admit that your case would be weaker if you hadn't had that and please explain why you can't do it. I think- I mean, you're nudging up against both judicial, you know, the autonomy of the judge as well as the benchmarks, I would think. I think the case would be weaker had the directive said, you are not complying with the letter of the benchmark. This case is supposed to be moved from ARPR to ALFO in seven days. You did it in eight. This case is supposed to be signed in one day. You did it in two. This case is supposed to be edited. If it had said that- You failed to meet the benchmarks. And what we would really like you to do is to explain to us why. Right. If you can't get them out. If it had been a case where the circumstances had been just like I just said, you blew the benchmark by one day. You blew it by two days. And if there's a reason why you didn't meet that deadline, please let us know. That would be a closer case. But that's not the case here. Here, he was given the option of explaining why he couldn't meet the deadline set forth in the directive, but the deadlines were not a result of blowing the benchmark deadlines. In fact, the problems with Judge Abrams- What do you mean? The deadlines that were laid on him were totally unrelated to the benchmarks? Please. The reason why he was late was because he hadn't satisfied- If he'd satisfied the benchmarks, all the cases would be gone. Right. I just asked the court to recognize that Judge Abrams' problem with timeliness and failure to get cases out on time predated the benchmarks. The benchmarks weren't established until April of 2007. So you're right. If they had been based strictly on the benchmarks, that would have been an issue. But that's not the case here. The first directive listed for each and every case, the age of the case, they were all 300, 400, 500 days old. And there was testimony from Judge Crisanto- If Judge Abrams had come back and had said with regard to each of the cases that were enumerated for him, this one, I've finished, it's gone. But the ones that aren't gone, here are the reasons why I'm having difficulty. Right? Then he would not have been guilty of failing to follow the instructions, correct? That's correct. And, in fact, he completely abdicated his duty to do that. He never even responded in writing to the first directive. And he responded with respect to 10 of 53 cases. Judge McPhail, the supervisor, then reassigned 11 of the cases. At the next directive, he still hadn't complied with respect to 19 of the cases that had been the subject of the first directive. By the time the fourth directive was issued in August of 2008, there were still cases left in the first directive. That's why Judge Abrams was removed. He failed to follow. Not only did he not provide an adequate response to each of the directives, but cumulatively over time, he exhibited basically an unwillingness to follow the directions issued by his supervisor. And there's no question that for purposes of good cause- What's your view on the insubordination issue? You heard colloquially between Mr. Broyden, myself, and Judge Wallach. Is there such a thing as partial insubordination? I'm not aware of such a concept. It's possible Judge Wallach mentioned- Well, let's imagine what would happen, say, for example, in the military, and a superior officer gave a subordinate person in the military two orders to do two things. And the person in the military did one but not the other. Wouldn't you imagine that the person would be charged with insubordination? Yes. And it would just be, I guess, a matter of penalty. I mean, I think the Williams case that Mr.- Well, isn't what Mr. Broyden was driving for is that if you do have insubordination, as Judge Wallach was pointing out, you're going to have an element of intent. That's correct. And the question is whether you can infer intent from silence or whether intent has to be positively shown, right? That's possible, but this case is not about insubordination. Judge Abrams was not charged with insubordination, so insubordination is irrelevant. The only reason insubordination is even being mentioned here is because Judge Abrams' counsel contends that Goodman requires insubordination, but it does not require insubordination. There are numerous cases out there in which a government employee has been charged with failure to follow instructions and held to have committed misconduct without intent. You're reading Goodman to say that that was the first time the board had considered basically using failure of performance, misconduct sort of thing to get at good cause. And you read Goodman to say, well, there are two ways. Either you can do this comparative analysis. You can say, well, you're worse than everybody else, or you can do it by way of insubordination. So maybe is there any thought here to the fair way to do it is to have what Mr. Broida was asking for in his brief, some standards to say, well, if you want to get at Abrams, you've got to show that he's worse than anybody else. No. In fact, the O'Neill decision, another board decision, said if an agency is going to pursue discipline against the ALJ because of errors in his decisions, it does not need to show that he committed more errors than other judges. The good cause standard is not the same as the performance standard under Chapter 43 or the performance standard under Chapter 75. Here, the main objective of the agency was to get decisions out in a timely fashion. The obligation of the agency is to the claimant. But you can have disparate treatment. No. Well, I wouldn't. I mean, under Chapter 43, you wouldn't be able to do that. You've got to treat everybody equally under 43. So you're saying under good cause, you can say, well, Judge Abrams, I think you're a little too slow, so you're out of here. Whereas Judge Clevenger is equally slow, but we'll keep him around. No. I'm sorry if I implied that. I was just saying that the O'Neill decision said that it doesn't have to be the strict type of performance standard that you would find in a Chapter 43 or Chapter 75 case. Here, Judge Abrams never even pled disparate treatment. In his reply brief, he brings up the issue, but there were other judges out there who had issues with their timeliness, and they issued reprimands. But Judge Park Saunders testified that most judges improved their performance. That was the difference between Judge Abrams and these other judges. For whatever reason, from 2003 through 2007 and 2008, when he was finally charged, Judge Abrams refused to comply with the agency's reasonable request to improve his productivity in order to provide the timely and prompt decisions that the claimants were entitled to. So the question here is whether there is substantial evidence to court a non-performance judge. And as a member of the court pointed out, Judge Abrams doesn't even refuse the fact that there was substantial evidence to support the agency's finding that Judge Abrams had failed to follow instructions. That is undisputed here. That's to Professor Boyd's – that's to his credit. I mean, he's – take the case for what it is. I mean, this is a test case in a way. And what he's trying to do is to say, notwithstanding all the facts that we're finding here, there's a legal problem. Right, and there's no basis for that legal problem. I mean, even in the Brennan case – He's urging us to disagree with you and to say we think we should erect a legal standard. Well, then I would ask the court to look at the Brennan case. In that case, there was an insubordination charge, but the court did not find insubordination was required. But in that case, the ALJ refused to let anyone except himself open his mail. And he charges that was a violation of his decisional independence because then other people would have a role in moving his cases through the process. It's very similar to what we have here. Again, not an insubordination charge, but a failure to follow instructions charge. And what Judge Abrams did here is then very similar to what was done there. But, you know, I would also try to – like to address Judge – Mr. Boyd's point that, you know, the administrative judge here mentioned the word insubordination in the opinion. But she also found elsewhere in the opinion that intent was not an element of a failure to follow instructions charge. So there's no – there was never any confusion here about whether or not Judge Abrams was subject to an insubordination charge or a failure to follow instructions charge. It was clear from the beginning, and that was – the failure to follow instructions charge was what was examined by the administrative law judge. And as I said, she – there are 77 pages showing that there's substantial evidence in the record to support the decision she made. So that's part of the questions that we would ask that the decision be affirmed. Thank you. Thank you, Ms. Hosswood. Mr. Boyd, you have a little time left to rebut. Thank you, Your Honor. I appreciate the time. Judge Carpenter, to answer your question whether Goodman was a case that was decided before the board ever came up with a concept of a charge based on failure to follow instructions, it was not. At page 7 of our great brief, we note that in 1983, which was a year before Goodman, the board had decided the case of Gatling v. National Transportation Safety Board, where they established the validity of a charge of refusal to comply with instructions without a necessary showing of insubordinate intent. My good friends from the Department of Justice point out something that I think is very interesting. That is that the agency, SSA, according to the Justice Department, tolerated the low level of productivity by Judge Abrams until about 2007 when they decided to do something about it. It's an interesting coincidence that it was in about 2007 or a little bit before that that the representatives of the bar of the claimants who were appealing their cases to Judge Abrams and others started to complain about Abrams because of this denial rate. They complained to social security executives, to people within the parent agency, to members of Congress, to congressional oversight committees, to members of the news media. They caused so much internal dissension within the Social Security Administration Division responsible for these ALJs that there were many emails, many of them reprinted in our brief in the appendix, complaining about Abrams and the difficulties he was causing for the agency because of his denial rate. These memos, these emails, not only were among the personnel specialists and the lawyers dealing with these cases and the personnel side of SSA, but they went up to the chief judge. This is really not a rebuttal argument, right? You're on rebuttal. This is really not a rebuttal argument. You're giving us some background here. Yes, but it responds to the suggestion by the agency that they had tolerated this problem for many years, and then they turned on Judge Abrams when they got all this adverse publicity. How many years is many years? When did he go on? It was 2001. So 2004 is when it… The publicity began in 2006 or 2007, and that's when these directives started. If you look at the email traffic, it's clear what they were trying to do. Maybe to their justification, I'm not saying they were wrong in trying to do something about a low-producing judge, but the trigger for this were the complaints from the bar and all the internal problems it was causing for Social Security Administration because of its denial rate. That's a judicial problem. Yeah, but this isn't about decisional independence. It's not about its denial. No, but that's what triggered this, and the reason I bring this up… The charge… The charge was failure to respond to instructions. Are you saying it's pretextual here? Yes, this is the problem. Right, but if you're going to say it's a pretext case, don't you have to raise that down below? Oh, this was raised. All these emails and such were developed during the board proceedings. And what was the board's decision on that? The administrative judge, the ALJ who decided this case, referred to this and dismissed it as merely a sign of disrespect for Judge Abrams by some mid-level people in the Social Security Administration. You have this type of pressure internally, and then it becomes very important to worry about the basis upon which… You're characterizing it as pressure. Yes. It's perfectly possible, perfectly reasonable that all it did was cause somebody to take a look at this particular judge and say, oh my goodness, I don't care what he does. What I care about is what he doesn't. He's not producing. It's certainly possible. Did you raise this challenge in your blip brief? Yes, sir. I think it was in the blip brief. Yes, the emails were spread right through the blip brief. I saw the background noise, but I didn't see it really as a ground for you to say that this is reversible error because there was a lack of substantial evidence to support a conclusion that this wasn't pretextual. I don't mind you telling me because it's already in the brief. And I've got to admire you struggling on behalf of your client, and maybe you sort of think on rebuttal you can put a main issue into the case. But I didn't dig that out of your brief. Oh, no, sir, it's not an issue. What it is is a suggestion that when you have the type of problem that was being developed in the Social Security Administration because of the complaints of the plaintiff's bar, that you have to be very careful about the standard that is applied to remove that judge, whether it's fairly applied. That's the point, sir. In any event, Mr. Broder, as you know, we have our own guidelines, and we have good cause for terminating the argument since it's well into your red light. Thank you very much, sir.